**DISTRICT 29, UNITED MINE WORKERS OF AMERICA,** Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 91–1442.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1992.

Decided Oct. 30, 1992.

As Amended Oct. 30, 1992.

George N. Davies, Birmingham, Ala., with whom Earl V. Brown, Jr., Washington, D.C., was on the brief, for petitioner.

William A. Baudler, Attorney, N.L.R.B. ("NLRB"), with whom Jerry M Hunter, General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Paul J. Spielberg, Deputy Asst. Atty. Gen. Counsel, NLRB, Washington, D.C., were on the brief, for respondent.

Before: BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

District 29 of the United Mine Workers of America, through its affiliate, Local 1895, is the bargaining representative for employees at the New Beckley Mining Corporation. (We will refer to both the Local and the District collectively as the Union.) When the Union started a strike against New Beckley, the firm contracted with Mahon Enterprises, Inc., to provide replace-

ment workers. On February 19, 1989, a number of these workers arrived from out of town and took lodging at a Comfort Inn not far from the mine. Around 4:30 AM on the morning of February 22, a large crowd, including some Union leaders, gathered in the Inn's parking lot and began picketing. While the Union claims here that the picketing was directed solely against Mahon and the replacement workers, the National Labor Relations Board found it to have been aimed at least partly at the Inn. Since picketing constitutes unlawful secondary boycott activity in violation of § 8(b)(4)(ii)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(ii)(B),[1] if "*any* object of [the activity] is to exert improper influence on secondary or neutral parties," *Local Union No. 501, IBEW (Pond Electric Services, Inc.) v. NLRB*, 756 F.2d 888, 892 (D.C.Cir.1985); see *NLRB v. Denver Building and Construction Trades Council*, 341 U.S. 675, 689, 71 S.Ct. 943, 952, 95 L.Ed. 1284 (1951), the Board found an unlawful secondary boycott.

The Union petitions for review. It argues first that the Board's finding is not supported by substantial evidence, and second that the Board improperly applied to this somewhat unusual setting a standard developed by the Board in its analysis of "common situs" picketing in *Sailors' Union of the Pacific (Moore Dry Dock)*, 92 NLRB 547 (1950), namely, that picketing activity raises a rebuttable presumption of illegality unless it *clearly* discloses that the dispute is with the primary employer. We reject both arguments and grant the Board's cross-application for enforcement of its order.

\* \* \* \* \* \*

■ The record readily supplies the substantial evidence needed to sustain the Board's finding that *one* object of the picketing, even if not the sole object, was to induce the Inn to cease doing business with the Mahon employees. See *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Denver Building and Construction Trades Council*, 341 U.S. at 689, 71 S.Ct. at 952 (applying substantial evidence standard to secondary boycott); see also 29 U.S.C. § 160(e). Individual picketers demanded of the Inn's manager why he would rent to "scabs" and asked him when he was "going to get them to leave." The Union leaders did nothing to repudiate these appeals. When the manager said he would talk to the Mahon employees and that "[t]hey won't be here tonight", the crowd began to disperse and Union leaders thanked the manager for his help.

The Union contends that the Board "ignored" the "overwhelming" evidence establishing that the Union was engaged in picketing against the strikebreakers. Even if this were true, however, it would not undercut the Board's finding that pressuring the Inn to oust the Mahon employees was *an* object of the picketing—all that is required under *Pond*, 756 F.2d at 892.

\* \* \* \* \* \*

■ In *Moore Dry Dock*, a "common situs" picketing case,[2] the Board held that failure to satisfy *any one* of four criteria would raise a rebuttable presumption that the picketing was illegal:

(a) The picketing is strictly limited to times when the *situs* of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the *situs*; (c) the picketing is limited to places reasonably close to the location of the *situs*; and (d) the picketing discloses clearly that the dispute is with the primary employer.

---

**1.** This section provides in relevant part that "[i]t shall be an unfair labor practice for a labor organization or its agents ... to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where ... an object thereof is ... forcing or requiring any person to ... cease doing business with any other person...." 29 U.S.C. § 158(b)(4)(ii)(B).

**2.** The "common situs" situation arises when the primary employer and at least one other employer are engaged in normal business operations at a common location, so that picketing the primary employer is likely to affect the other employers.

*Moore Dry Dock*, 92 NLRB at 549 (emphasis in original); see *Local 761, IUE (General Electric Co.) v. NLRB*, 366 U.S. 667, 677, 81 S.Ct. 1285, 1291, 6 L.Ed.2d 592 (1961) (approving Board application of *Moore Dry Dock*). The Union takes issue with the Board's use of the fourth criterion, the insistence that the picketing be clearly directed at the primary employer, in this case. The Union emphasizes that the case does not involve garden variety common situs picketing. "The Comfort Inn was clearly engaged in its normal business, but Mahon Enterprises was not. The Mahon employees were sleeping, rising and dressing to prepare for work. They were at their residence." Union Brief at 18. Accordingly, the Union says, the picketing was "residential picketing" and it is wrong to apply *Moore*'s fourth criterion.

The nature of the Union's argument is not entirely clear, but whether we view it as a claim that the extension of *Moore*'s fourth criterion to this case is impermissible under the statute, or that the extension has not been supported by reasoned decision making, see *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C.Cir.1970), the result is the same.

The illogic of the claim is apparent. At its heart it is an argument that because the *primary* employer (Mahon and/or New Beckley) was not engaged in its normal business at the Comfort Inn, it does not make sense to apply § 8(b)(4)(ii)(B) to protect the secondary employer (Comfort Inn) from the Union's interference with its business. We may sidestep the issue of whether Mahon was engaged in its ordinary business when it lodged the imported employees at the Comfort Inn. Assuming (as the Union does) that it was not, the absence of ordinary business by the primary employer at the picketing site *increases*, rather than decreases, the need for making clear that the picketing's target is only the primary employer. Indeed, that may well underlie *Moore*'s second criterion—the requirement that the primary employer be engaged in its normal business at the situs. Given the Board's clear recognition that the case was not one of conventional common situs picketing, see Joint Appendix at 115, and the

obvious appropriateness in the present context of demanding that the picketing focus clearly on the primary employer, we see no need of further justification for the Board's application of the fourth *Moore* criterion to this case.

Accordingly, we dismiss the petition for review and grant the Board's cross-application for enforcement.

*So ordered.*